UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| OSF HEALTHCARE SYSTEM, d/b/a ) <br> SAINT FRANCIS MEDICAL CENTER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> EMCG LLC EMPLOYEE BENEFIT ) <br> PLAN, and ERIN CRIBBS, ) <br> ) <br> Defendants. ) | Case No.   13-cv-1146 |

## O R D E R  &  O P I N I O N

This matter is before the Court on Defendant EMCG LLC Employee Benefit Plan's[1] Motion to Dismiss Plaintiff's Second Amended Complaint ("Complaint"). Plaintiff filed a Response to the Motion (Doc. 12). Defendant then filed a Motion for Leave to File a Reply (Doc. 14). Because the Court finds Defendant's Reply helpful, the motion is granted. Defendant has also requested oral arguments on the Motion to Dismiss. Because the Court finds that it can determine this issue based upon the record and written arguments before it, Defendant's request is denied. For the reasons stated below, Defendant's Motion to Dismiss is granted.

---

[1] Because this order addresses only Defendant EMCG LLC Employee Benefit Plan's Motion to Dismiss, any references to "Defendant" hereinafter refer to Defendant EMCG LLC Employee Benefit Plan, unless indicated otherwise.

**RELEVANT FACTUAL BACKGROUND** [2]

In September 2010, Defendant Erin Cribbs received medical care from Plaintiff OSF Healthcare. (Doc. 6 at 1). At the time Cribbs sought treatment from Plaintiff, she had health insurance coverage through Defendant EMCG LLC Employee Benefit Plan. (Doc. 6 at 2). The health insurance plan provides that Defendant would pay 80% of Covered Medical Services until Cribbs met her annual out of pocket maximum of $2,000. (Doc. 6-2 at 11). Once Cribbs reached that maximum, Defendant would pay 100% of the Covered Medical Expenses. (Doc. 6-2 at 11).

Following Cribb's treatment, Plaintiff submitted to Defendant a claim for payment of benefits amounting to $27,499.90. (Doc. 6 at 1-2). Defendant paid to Plaintiff $4,192.59, but denied paying the remaining balance as those charges "exceed[ed] the Plan's Allowable Claim Limits." (Doc. 6-5 at 1). On March 4, 2011, Defendant sent Plaintiff a Notice of Adverse Benefit Determination, which explained why it was denying payment, and outlined the appeal procedures Plaintiff should follow if it elected to appeal the determination. (Doc. 6-5 at 14-17).

The appeals process allows a claimant to file an appeal of an Adverse Benefit Determination denying benefits within 180 days of that denial. (Doc. 6-3 at 48). If the first appeal is denied, a claimant may file a second appeal within sixty days. (Doc. 6-3 at 48). At the first appeal level, a claimant must submit in writing all pertinent information, including "[a]ll facts and theories supporting the Claim for benefits," and a statement expressing why the claimant is entitled to benefits under

---

[2] Unless otherwise noted, facts are taken from the Complaint, or exhibits, and are taken as true.

2

the health plan. (Doc. 6-3 at 49). A second appeal, if filed, must also be submitted in writing and include the same information as required for the first appeal. (Doc. 6-3 at 50). Further, the plan states "[a]ll claim review procedures provided for in the Plan must be exhausted before any legal action is brought." (Doc. 6-4 at 1). Plaintiff was made aware of this appeal process when it received the initial denial of benefits letter from Defendants. (Doc. 6-5 at 7-13).

On June 4, 2011, Plaintiff appealed the denial of benefits by letter. (Doc. 6-5 at 3-4) Then, on July 12, 2011, Defendant denied Plaintiff's appeal, explaining that the charges were in excess of the allowable limits under the health plan, and setting forth the procedure for a second appeal. (Doc. 6-5 at 7-13).

Cribbs paid a deductible and co-pay amounting to $1,548.15 on October 16, 2012. (Doc. 6 at 2; Doc. 6-5 at 21). The total amount of payment Plaintiff received thus amounts to $5,740.74. (Doc. 6 at 1). Therefore, a balance of $21,759.16 remains unpaid. Plaintiff has filed suit against both Defendant and Cribbs seeking payment of the remaining balance. In Count I, Plaintiff makes claims against Defendant under the Employee Retirement Income Security Act ("ERISA"). In Counts II and III, Plaintiff makes claims against Cribbs under state law theories.

## LEGAL STANDARD

In ruling on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To

survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must contain sufficient detail to give notice of the claim, and the factual allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although a plaintiff need not present detailed factual allegations, a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In ruling on a 12(b)(6) motion, courts can consider the complaint, and any attached exhibits. *Thomson v. Ill. Dep't. of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). If an exhibit contradicts allegations made in the complaint, "the exhibit ordinarily controls." *Bogie v. Rosenberg,* 705 F.3d 603, 609 (7th Cir. 2013).

## DISCUSSION

The Court now considers Defendant's Motion to Dismiss. Defendant argues that Plaintiff's Complaint is deficient on its face for two reasons: "(1) OSF failed to exhaust administrative remedies under the Plan and (2) the Plan does not provide for any additional benefits under the terms of the Plan document beyonf [sic] what has already been paid." (Doc. 8 at 2). Additionally, Defendant argues that OSF is "not entitled to recover interest under the prompt pay statute" because ERISA preempts the state statute. (Doc. 8 at 2).

Plaintiff raises four arguments in its Response to Defendant's Motion. First, Plaintiff claims that the Motion must be denied, as it is "not a True Motion to Dismiss." (Doc. 13 at 4). Second, Plaintiff argues that it did exhaust the available administrative remedies. Third, Plaintiff alleges that additional payment is

4

warranted. Lastly, Plaintiff claims that the Illinois Prompt Pay Statute is not preempted by ERISA.

Regarding Plaintiff's first claim, the Court finds Defendant has filed a proper Motion to Dismiss. Defendant seeks dismissal for failure to state a claim, which is precisely the goal of a motion to dismiss pursuant to Rule 12(b)(6). The Motion attacks the sufficiency of Plaintiff's complaint, alleging that the facts do not plausibly state a claim for relief. Plaintiff is correct that ordinarily exhaustion of remedies is an affirmative defense that a plaintiff need not anticipate and plead around in its complaint. However, for ERISA actions, a district court may address failure to exhaust by evaluating the pleadings. See *Shine v. University of Chicago*, No. 12 C 8182, 2013 WL 1290206, *4 (N.D. Ill. Mar. 28, 2013) (citing *Ahr v. Commonwealth Edison Co.*, No. 036645, 2005 WL 6115023, at *3 (N.D. Ill. Feb.24, 2005); *Potter v. ICI Americas Inc.*, 103 F.Supp.2d 1062, 1065–66 n. 2 (S.D.Ind. Oct.4, 1999); *Coats v. Kraft Foods, Inc.*, 12 F.Supp.2d 862, 869 (N.D.Ind.1998)). Therefore the Court finds the Motion proper and does not further consider Plaintiff's first claim.

As explained below, the Court finds that Plaintiff has not adequately alleged exhaustion of its administrative remedies, and therefore has failed to state a plausible claim to relief. Accordingly, the Court does not consider the remaining arguments, and Defendant's Motion to Dismiss is granted.

**I. Count I**

Defendant argues that by not filing a second appeal, Plaintiff failed to exhaust its administrative remedies, and therefore Count I must be dismissed. (Doc.

5

8 at 2). "As a pre-requisite to filing suit, an ERISA plaintiff must exhaust his internal administrative remedies." *Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 679 (7th Cir. 2002). The exhaustion requirement encourages "private resolution of ERISA-related disputes," and "enhances the ability of plan fiduciaries to expertly and efficiently manage their plans by preventing premature judicial intervention." *Powell v. A.T.&T. Communications, Inc.*, 938 F.2d 823, 825-26 (7th Cir. 1991). Further, the requirement is consistent with Congress's apparent intent in requiring internal claim procedures, "to minimize the number of frivolous lawsuits, to promote consistent treatment of claims, to provide a nonadversarial dispute resolution process, and to decrease the cost and time of claims settlement." *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 402 (7th Cir. 1996). An ERISA plaintiff's claim must sufficiently allege exhaustion, or that an exception to the exhaustion requirement applies. *Id*. at 402.

In the present case, the internal administrative remedy is the two-step appeal process outlined in the health care plan. (Doc. 6-3 at 48-50). The appeals process allows a claimant to file a written appeal including the required information within 180 days of the denial of benefits. (Doc. 6-3 at 48). If that appeal is denied, a second appeal may be filed, and must include the same information as the first. (Doc. 6-3 at 48). Additionally, the plan states that this appeals process must be exhausted before a claimant may bring legal action against Defendant. (Doc. 6-4 at 1). The initial denial of benefits letter from Defendant made Plaintiff aware of the appeal process. (Doc. 6-5 at 7-13).

Plaintiff claims that its Complaint should not be dismissed on this ground and raises three arguments in support of this claim, asserting: 1) Plaintiff contacted Defendant twice regarding reconsideration of its denial of payment; 2) the second level of appeal is not clearly required of health care providers; and 3) further appeals would have been futile.

Plaintiff has not provided enough facts to demonstrate that it exhausted its administrative remedies. For the following reasons, the Court finds that Plaintiff did not exhaust its administrative remedies, and thus Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) is granted.

**A. Plaintiff's Contact with Defendant**

Plaintiff fails to show that it complied with the required appeal process and exhausted its administrative remedies. Plaintiff admits it did not file a second written appeal, as required by the plan's appeal process. (Doc. 13 at 7-8). However, without providing specific information, Plaintiff argues that it "did contact [Defendant] twice for reconsideration," and that these requests for reconsideration "complied with the plan's requirement for two appeals." (Doc. 13 at 7). As Defendant states in its Reply, "[m]erely contacting [Defendant] to discuss a claim does not constitute an appeal." (Doc. 14-1 at 7).

Even if Plaintiff did contact Defendant regarding the denial of benefits, such contact does not comply with the plan's stated appeal process, as appeals are to be submitted in writing with specific information included. (Doc. 6-3 at 49-50). Thus, the purported contact does not meet the requirements set forth by the plan's appeal process.

**B. Appeal Process for Healthcare Providers**

Further, Plaintiff argues that because it is a health care provider, rather than an individual claimant, the appeal process does not apply to Plaintiff in the same way. (Doc. 13 at 7). Plaintiff makes two erroneous claims concerning this argument.

First, Plaintiff states that only one level of appeal is required of providers. (Doc. 13 at 7). However, in support of that contention, Plaintiff cites to the health plan, which clearly states that providers who file an appeal must comply with the same requirements set forth for claimants, meaning that two levels of written appeals are required in order to exhaust administrative remedies. (Doc. 6-4 at 1). Additionally, the appeal requirements were sent to Plaintiff by Defendant in the Notice of Adverse Benefits Determination, thereby notifying Plaintiff that providers are to follow the same appeals process as other claimants. (Doc. 6-5 at 10-12).

Second, Plaintiff states that a second appeal is elective and that no clear language "requires a provider to file a second appeal letter." (Doc. 13 at 7). Certainly, Plaintiff was not *required* to file a second appeal – it had the option of accepting Defendant's decision following the first appeal, and apparently chose that option by not filing the second appeal and by instead seeking payment directly from Cribbs. However, a second appeal is required in order to fully comply with the plan's appeals process and exhaust all administrative remedies before filing suit, and Plaintiff, by choosing not to file a second appeal, failed to comply with that process.

**C. Futility Exception to the Exhaustion Requirement**

Lastly, Plaintiff argues that, even if the Court finds it did not exhaust its administrative remedies, Plaintiff is exempt from complying with the exhaustion requirements because "any further appeal on this matter would have been futile." (Doc. 13 at 7). An exception to the exhaustion requirement exists where "further administrative appeal is futile." *Zhou*, 295 F.3d at 680. However, in order to succeed on a futility claim, a plaintiff "must show that it is certain that [its] claim will be denied on appeal, not merely that [it] doubts that an appeal will result in a different decision." *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996) (internal quotation marks omitted). A plaintiff claiming that exhaustion is futile must proffer "facts indicating that the review procedure that he initiated will not work." *Zhou*, 295 F.3d at 680.

Plaintiff argues that a second appeal would have been futile because "[a]t the time that another appeal would have been contemplated, the appeal would not have been considered," as it would have been untimely. (Doc. 13 at 8). Plaintiff then elected not to file a second appeal, and to instead pursue Cribbs directly for the remaining payment. (Doc. 13 at 7). Plaintiff has not shown that a second appeal would fail. Rather, Plaintiff alleges that by the time it decided it should file a second appeal the time limit had expired. (Doc. 13 at 8). A decision not to file a timely appeal does not render that appeal futile, and a party cannot circumvent the exhaustion requirement by waiting until the deadline has expired. Plaintiff has not shown that its claim was certain to be denied on appeal, and has instead indicated that it made a conscious decision not to file a second appeal.

Additionally, Plaintiff claims that a second appeal's review would have been biased because a more senior member of the same office would have reviewed the appeal. (Doc. 13 at 8). The Vice President of ELAP Services, LLC,[3] reviewed Plaintiff's first appeal, and had Plaintiff filed a second appeal, the President of ELAP would have reviewed it. (Doc. 13 at 8; Doc. 6-5 at 11, 13). Plaintiff thus argues that the review procedures for the second appeal would not have been "an independent review of any kind," and that the outcome "was . . . not likely to change by having the president, instead of the vice-president, review the file." (Doc. 13 at 8). However, case law establishes that a denial of benefits and subsequent review of an appeal being conducted by the same company is "not enough to constitute futility." *Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1238 (7th Cir. 1997); *see also Dale v. Chicago Tribune Co.*, 797 F.3d 458, 467 (7th Cir. 1986).

Moreover, the review procedures in question appear to comply with 29 C.F.R. § 2560.503-1(h)(3)(ii), which requires that a person reviewing a second appeal be neither the same individual who reviewed the first appeal, nor a subordinate of that individual. 29 C.F.R. § 2560.503-1(h)(3)(ii). Further, § 2560.503-1(h)(3)(ii) requires that the individual reviewing a second appeal not give deference to the decision of the first appeal. Plaintiff admits that the second appeal would have been reviewed by ELAP's president, (Doc. 13 at 8), who is neither the same person who reviewed the first appeal, nor a subordinate of that person.

---

[3]   ELAP Services, LLC, is "the Designated Decision Maker" for Defendant and in this capacity, ELAP makes claim determinations and reviews appeals for Defendant. (Doc. 6-5 at 7).

Further, Plaintiff has not cited to any case law in support of its claim that the review process is problematic. Plaintiff also has provided no facts demonstrating that ELAP's president would have given deference to the vice president's decision.

Finally, Plaintiff also asserts that the clarity of Defendant's first denial of its claim showed that an appeal would be futile. (Doc. 13 at 7). The Court must reject this argument as absurd. Defendant's denials of benefits *should be* clear. Plaintiff's argument would have the Court establish a rule that only uncertain or vague denials trigger the second-appeal requirement. This would undercut the purpose of the two-appeal process by making the first appeal superfluous, as well as leading to unnecessary litigation over the subjective, fact-based question of whether a denial of benefits was "clear" or "vague."

Though Plaintiff doubts that a second appeal would result in a different outcome, Plaintiff has not shown that the appeal was certain to fail. *See Lindemann,* 79 F.3d at 650. Therefore, Plaintiff does not demonstrate that a second appeal would have been futile. Accordingly, Plaintiff's argument based on the futility exception is rejected.

Therefore, the Court grants Defendant's Motion to Dismiss, because Plaintiff has not shown that it exhausted its administrative requirements. Plaintiff's purported contact with Defendant does not constitute an appeal, as it does not comply with the health plan's appeal process. Further, Plaintiff has not shown that, as a health care provider, it was exempt from following the stated appeal process. Lastly, Plaintiff has not shown that a second appeal would be futile. Thus, Count I of Plaintiff's Complaint is dismissed.

**II. Counts II and III**

The remaining Counts in Plaintiff's Complaint are state law claims against Cribbs. In its Response to the Motion to Dismiss, Plaintiff questions how the claims against Cribbs could be resolved if Defendant is dismissed from this case, arguing that there needs to be a determination on the merits of what amount of money each Defendant owes to Plaintiff. (Doc. 13 at 14). While the Court understands that this issue is of importance to Plaintiff, the Court may only consider the issues currently before it and over which it can properly exercise jursidiction. In granting the Motion, the Court finds that the state law claims in Counts II and III should be remanded to the state courts.

According to 28 U.S.C. § 1367, when a district court has original jurisdiction over a claim, the courts shall also "have supplemental jurisdiction over all other claims that are so related to the claims in action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). However, the district courts can decline to "exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it had original jurisdiction." 28 U.S.C. § 1367(c). A district court should consider and weigh the factors of judicial economy, convenience, fairness, and comity in deciding whether to exercise jurisdiction over pendent state-law claims rather than resolving them on the merits. *Wright v. Associated Ins. Co. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "Thus, the general rule is that, when all federal-law claims are dismissed before trial, the pendent claims should be left to the state courts." *Id*. at 1252. The Seventh Circuit

has identified circumstances in which district courts may rebut that presumption: when the statute of limitation has run on the state law claim, when "substantial judicial resources" have been expended such that remand would cause a "substantial duplication of effort", or when it is "absolutely clear" how the state law claims will be decided. *RWJ Management Co., Inc., v. BP Products North America, Inc.*, 672 F.3d 476, 480 (7th Cir. 2012).

Because the Court here is dismissing Plaintiff's Complaint as to Count I, the remaining Counts would be in federal court only under supplemental jurisdiction. The statute of limitations has not yet run on the state law claims, duplication of effort is not a concern as substantial judicial resources have not been committed, and it is not clear how the state law claims will be decided. The Court therefore follows the aforementioned general rule, and, considering the factors of judicial economy, convenience, fairness, and comity, declines to retain jurisdiction over Plaintiff's state law claims against Cribbs, finding they would be better heard in the state courts.

has identified circumstances in which district courts may rebut that presumption: when the statute of limitation has run on the state law claim, when "substantial judicial resources" have been expended such that remand would cause a "substantial duplication of effort", or when it is "absolutely clear" how the state law claims will be decided. *RWJ Management Co., Inc., v. BP Products North America, Inc.*, 672 F.3d 476, 480 (7th Cir. 2012).

Because the Court here is dismissing Plaintiff's Complaint as to Count I, the remaining Counts would be in federal court only under supplemental jurisdiction. The statute of limitations has not yet run on the state law claims, duplication of effort is not a concern as substantial judicial resources have not been committed, and it is not clear how the state law claims will be decided. The Court therefore follows the aforementioned general rule, and, considering the factors of judicial economy, convenience, fairness, and comity, declines to retain jurisdiction over Plaintiff's state law claims against Cribbs, finding they would be better heard in the state courts.

## CONCLUSION

Plaintiff has not stated a federal claim for which relief can be granted. Plaintiff did not exhaust its administrative remedies before filing suit against Defendant, and its claim as to Count I is rejected on those grounds. Therefore, Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) is GRANTED, and Counts II and III of Plaintiff's Complaint are REMANDED to the Circuit Court of Peoria County.

Entered this <u>24th</u> day of July, 2013.

                                                s/ Joe B. McDade
                                                JOE BILLY McDADE
                              United States Senior District Judge